THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WARREN S. BATES, Appellant.

*Word " willfully," as used in section 56 of the Penal Code, defined.*

The word " willfully," as used in section 56 of the Penal Code, means something more than a voluntary act and more also than an intentional act, which, in fact, is wrongful; it includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness.

A person is not guilty of a misdemeanor under such section if he enters into a public office, to which he has not been duly elected or appointed, under a *bona fide* claim of right which he might reasonably believe entitled him to take possession — but in such case there must be colorable ground for such a claim.

APPEAL by the defendant, Warren S. Bates, from a judgment of the Court of Sessions held in and for the county of Tompkins, rendered on the 26th day of February, 1894, convicting the said defendant of the crime of intrusion into a public office, and also from an order entered in the office of the clerk of the county of Tompkins on the 26th day of February, 1894, denying the defendant's motion for a new trial made upon the minutes.

*John A. Milne* and *S. D. Halliday*, for the appellant.

*J. H. Jennings, District Attorney*, for the respondent.

MERWIN, J.:

By section 56 of the Penal Code it is provided that " a person who willfully intrudes himself into a public office, to which he has not been duly elected or appointed, or who, having been an executive or administrative officer, willfully exercises any of the functions of his office after his right to do so has ceased, is guilty of a misdemeanor." Under this, the defendant was convicted of intruding into the office of excise commissioner in the town of Ulysses in the county of Tompkins.

In that town the excise commissioners in 1890 were J. B. Spaulding, whose term of office expired in the year 1891, L. W. Carpenter, whose term expired in 1892, and H. C. King, whose term expired in 1893. These persons met as a board of excise on May 5, 1890, and after transacting the usual business of the year they

adjourned to June 5, 1890. At this date they met and entered upon their minutes the following: "Upon examination of a law passed by the last Legislature, the board have decided that they are not qualified to act as excise commissioners, having failed to comply with the requirements of said law." They thereupon adjourned indefinitely and did not meet again during the year. The law which they referred to was chapter 163 of the Laws of 1890, which was passed and took effect on April 22, 1890. It provided that, within thirty days after the passage of the act, every excise commissioner should make and subscribe an oath before a proper officer " to the effect that he is neither directly or indirectly interested in the manufacture or sale of any spirituous or malt liquors, ales, wine or beer," and that such oath should be filed in the clerk's office of the town. It was also provided that a failure to take such oath " shall disqualify any one from holding, or debar any one from continuing to hold, any office or position mentioned in this act."

At the annual town meeting in February, 1891, there were two tickets in the field for excise commissioners, each having three names on; one being stated to be for three years, one for two years and one for one year. The successful ticket was W. J. Nixon for three years, W. J. Farrington for two years, and H. C. King for one year. These duly qualified and entered upon the discharge of the duties of the office. At the annual town meeting in February, 1892, there were two tickets in the field for excise commissioners, each having but one name on. On one was H. C. King, and he was elected and he duly qualified and entered upon the discharge of the duties of the office. At the town meeting in February, 1893, there were two tickets, upon one of which there were three names: A. V. Van Liew for three years, Warren S. Bates for two years and C. W. Northrup for one year. The other ticket had but one name, and that for three years. The ticket having the three names received a majority of the votes. Thereafter, and on May 13, 1893, Van Liew and the defendant Bates met as a board and granted several licenses. That is the intrusion here complained of, and for which defendant was indicted.

It is claimed by the People that the office which the defendant assumed to fill was rightfully possessed by King under his election

in 1892. The defendant claims that King, having been elected in 1890 for three years, still held that office in 1892, and so was then ineligible to election to another position on the same board, and that, therefore, the election in 1892 being invalid there was in 1893 a vacancy for two years to which the defendant was properly elected.

It seems to have been conceded at the trial that the failure of the commissioners in 1890 to take the oath prescribed by the act of 1890, did not of itself vacate the offices they held. It was, however, left to the jury as a question of fact, to say whether or not King, by what he did in 1890, and his subsequent conduct, abandoned the office he held in 1890, and the court charged that if the jury found such abandonment, then King, in 1892, was eligible, and so no vacancy in 1893 for two years for defendant to fill, and that if they did not find such abandonment, then the defendant was not guilty.

The court also charged, as to the force of the word " willful" in the statute, that its meaning " is that of intentional, not by inadvertence ;" that " if he (the defendant) intended to do what he did do, then he did so willfully," and the court refused to charge, upon the request of defendant, that if the defendant " acted in good faith and believed he was excise commissioner in 1893, he was not guilty." In the course of the trial the defendant offered to prove that at the time of his election he made investigation as to the question of the legality of the election, and took the advice of attorneys, and acted in good faith, believing he was legally elected. This was excluded.

Assuming that the question of abandonment was one for the jury to pass upon, was the court correct in its ruling on the subject of good faith, and the meaning to be given to the term " willful ? "

In *Wass* v. *Stephens* (128 N. Y. 123) the court says, in speaking of section 639 of the Penal Code which provides for the punishment of " any person who willfully or maliciously displaces, removes, injures .or destroys," among other things, any pipe or main for conducting water or gas ; " but the word ' willfully' in the statute means something more than a voluntary act, and more also than an intentional act, which in fact is wrongful. It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness." The same doctrine is asserted in *Hewitt* v. *Newburger* (141 N. Y. 538). In *People* v. *Flack* (125 id. 324), where the

defendant was indicted under section 168 of the Penal Code for falsely instituting an action for divorce, it was held that a charge which in substance made the question of guilt to depend solely upon the intentional doing of an unlawful act, was erroneous. It must also be found that there was a criminal intent. In *People* v. *Stevens* (109 N. Y. 159) the defendant was indicted, under section 467 of the Penal Code, for the offense of intrusion on lands. The statute does not in terms make the intent a material element of the offense. Still the court was of the opinion that if the defendant entered under a *bona fide* claim of right which he might reasonably believe entitled him to take possession, it would be a defense, and it was said that the existence of a criminal intent, as a necessary constituent of the offense, must be implied. It was, however, held that to sustain such a defense of entry in good faith, there must be some colorable ground for such a claim.

In the light of these authorities, we think the court erred in excluding evidence of good faith, and in its charge upon the force to be given to the word " willful." In substance, the guilt of the defendant was made to depend solely upon the question of whether he was entitled to the office. The defendant was, we think, entitled to the benefit of the rule, laid down in the *Stevens* case, that if he entered under a *bona fide* claim of right which he might reasonably believe entitled him to take possession, it would be a defense. It cannot be properly said that there was no colorable ground for such a claim. King's first term had not expired in 1892 ; he had not, as the court in effect held, forfeited or resigned the office, and the question of abandonment was in sufficient doubt to send it for determination to the jury. A majority of the electors evidently supposed that the position of defendant was correct.

It follows that the judgment should be reversed, and a new trial ordered.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed and a new trial ordered, and the clerk directed to enter judgment and remit a certified copy thereof, with the return and decision of this court, to the Court of Sessions of Tompkins county, pursuant to sections 547 and 548 of the Code of Criminal Procedure.