State ex rel. District Attorney et als. vs. Sheriff.

have been granted on the ground of newly discovered evidence. As we glean it from the bill, testimony was given by the State as to the kind of coat the accused wore the night of the offence, and this it is charged in the bill, surprised the accused. The newly discovered evidence the bill attributes to witnesses, who, if permitted, it is claimed, will swear, one, that the accused, in prison that night, wore a different kind of coat, and that coat "was as it is now cut, but the cuts seem to have become longer through wear," and both witnesses, it is claimed, will give testimony tending to show there was in the prisoner's cell no other but that of the kind different from that to which testimony was give on the trial. The grounds of the application to procure testimony of those near at hand, and with whom the accused had been in contact during his confinement awaiting trial, does not impress us favorably. Nor did it the trial judge. It is our jurisprudence not to reverse the rulings of the trial judge unless the basis for such reversal is clearly shown.

As to the other point presented by the bill—i. e., the right of the trial judge to appoint a District Attorney in this case, we think the power is clearly conferred by the Act No. 74 of 1876.

It is therefore ordered that the sentence of the lower court be affirmed.

---

## No. 11,443.

STATE EX REL. O. D. BILLON, DISTRICT ATTORNEY, ET ALS. VS. A. L. BOURGEOIS, SHERIFF.

The prescription of two and three years, applicable to acts of misfeasance and non-feasance of sheriffs (Revised Statutes, Sec. 2816), has no application to proceedings of his removal under Arts. 196 and 201 of the Constitution.

Specifications and proof of failure to make arrests and execute process, nor exhibiting corruption, gross neglect or inefficiency, will not authorize the removal of a sheriff under Arts. 196 and 201 of the Constitution.

Nor will a return and sheriff's deed, agreed by the attorneys to be nominal, authorize the removal of the sheriff because they contain a recital that the price of an adjudication was paid, inserted to show compliance with the adjudication, the deed being intended merely to be a prelude to a subsequent act to a purchaser, who by agreement is to furnish notes to be delivered to the seizing creditor.

But the record showing that the attorney of the seizing creditor believed that a part of the adjudication was to be paid to the sheriff, it was negligence in the sheriff in not requiring or seeking instructions from the attorney of the seizing creditor before reciting in his return that the full amount of the adjudication

was paid, and the court, on admonition in this respect, holds that, under the peculiar circumstances of this case, the sheriff should not be punished with deprivation of his office.

### ON APPLICATION FOR REHEARING.

Though a sheriff be guilty of a technical disregard of the precepts of law governing his official conduct, he can not be removed from office if his acts were done in pursuance of advice of counsel in good faith, intending no wrong.

APPEAL from the Twentieth District Court, Parish of St. James. Guion, J.

Oscar D. Billon, District Attorney, Frank C. Zacharie and R. McCulloh for Plaintiffs, Appellants.

R. N. Sims, St. M. Berault and J. A. Gaudet for Defendant, Appellee.

The opinion of the court was delivered by

MILLER, J.    This appeal is from the judgment of the lower court in favor of defendant in a suit brought under Art. 201 of the Constitution to remove him from the office of sheriff of the parish of St. James.

There were originally eleven specifications of misconduct in office charged against defendant.    The fourth has been disposed of by the previous judgment of this court.    The ninth, tenth and eleventh have been discontinued.    So that on this appeal the controversy has been reduced to the first, second, third, fifth, sixth, seventh and eighth specifications.

The exception was reserved in the lower court to the ruling of the lower court rejecting two of the jurors summoned on the ground they were brothers of the relator.    As the relators do not desire the case remanded on this ground, we think it best not to pass on this exception.

Another exception of relators was to the admissibility of testimony offered by defendant to repel the charges in the specifications first, second and third.    These charged substantially that the defendant, under the writ in his hands for the sale of a plantation for cash, failed to execute the writ; that he made a false return; that he had sold the plantation for cash when none was paid, and that in the deed he executed, it was stated he had received a certain amount in cash,

when he had received none. The testimony of the sheriff tended to show these statements in the return and in the deed were in accordance with the arrangements of the attorneys concerned in the litigation as to the settlement of the price of adjudication. The objection was that under the general issue no such testimony was admissible. The allegations of the petition being that the sheriff's return and deed were false and that he had not executed the writ in respect to exacting cash, the testimony tended to repel these charges and under our system special allegations in the answer are not essential to authorize testimony of a character to repel the allegations in the answer. Code of Practice, Arts. 323, 327; Boudreaux vs. Tucker, 10 An. 80; 1 Rob. 292. The relator further objected that the sheriff could not offer this testimony to contradict his return. The rule excluding testimony of this character is commonly applied to protect parties who have acquired rights based on the returns of the sheriff. In this the testimony to contradict the return comes from the relators. That offered by the sheriff tends to maintain his return as made in accordance with the purpose of the parties. We do not think the rule of exclusion invoked by relators applies.

Relators offered on the trial the record in the suit of Graugnard vs. Forsyth, in which the sheriff testified the sum of twelve thousand five hundred dollars of the proceeds of sale of the Pike's Peak plantation were in his possession. The court restricted the offer to the specifications on trial. With that restriction, the testimony appears to have been read and discussed before the jury. The court charged the jury to exclude from consideration the fourth specification, which charged perjury on the sheriff in giving this testimony. The relators requested the charge that the testimony should be weighed by the jury in connection with the pending specifications, and excepted to the refusal of the court to give the charge. The previous judgment of this court in this case maintained the exception of defendant to this fourth specification, on the ground that the perjury charged was not within the scope of Arts. 196 and 201 of the Constitution, under which these removal proceeding were instituted. If the court had given the charge as requested, it would have been bound to charge also, as it did, that the specification of perjury to which the testimony related was not before the jury. Whatever bearing this testimony can be deemed to have on the specifications that the sheriff made a false return as to money in his possession, this court can

consider in the judgment to be rendered on this appeal, but the supposed error of the lower court, in declining to give the charge requested, would not authorize the remanding of the case, and this is all that need be said with reference to this exception.

On the part of the defendant, the plea of prescription was made of one and two years, applicable to acts of misfeasance, non-feasance of sheriffs; and, in support of the exception, we are referred to the 3546th section of the Revised Statutes. This prescription protects the sheriff against civil liability, but the scope and purpose of the Constitution in Arts. 196 and 201 is different. These articles are in the public interest, to secure purity and efficiency in the administration of public offices. They provide for the removal of dishonest, unfaithful or inefficient officers, and no prescription protects them while in office. Thus it has been determined that the removal proceedings may be for acts prior to the existing, but embraced within a previous term of the incumbent. Trial of Judge Barnard, New York; of Judge Prindle impeachment proceedings, same State; State ex rel. Billon, 45 An. 1350, So. Rep., Vol. 14, p. 28; State vs. Cheevers, 32 An. 946. We see no force in the plea of prescription.

We have gone through a voluminous record in connection with the charges in the fifth, sixth, seventh and eighth specifications. Grouped for consideration they impute to the defendant the failure to execute a warrant of arrest, remissness in not arresting a party for murder, and with detaining prisoners in two instances after *nolle prosequi*, and charging the parish fees for maintaining these prisoners up to the time of their actual discharge. It is not shown by the testimony that the warrant of arrest reached the sheriff, or if it did, that the District Attorney gave any special instructions in reference to its execution or called for it. The killing, the subject of one of the specifications, occurred at night, ten miles from the sheriff's office. He was telephoned, was sick in bed, but his deputy went to the locality the next or day succeeding, and seems to have exerted himself to make the arrest, but the offender had fled. There were a number of people present when the killing occurred, and a justice at hand. We can not find in the fifth, sixth, seventh and eighth specifications the basis to remove a public official. No corrupt motive is imputed to him in connection with these acts, and at best

they do not show such negligence or inefficiency as to authorize the deprivation of his office.

The first, second and third specifications are far more serious, and it has not been without grave consideration and difficulty we have reached our conclusion on this branch of the case. These specifications relate to the failure of the sheriff to sell for cash as directed by the writ and the alleged false return and deed of the Pike's Peak plantation reciting that the price of adjudication had been paid to him, when in fact no such payment had been made. With reference to the failure to exact the cash for the adjudication, this often happens under the direction or assent of the seizing creditor. The mode of settling for the price may, as all know, become a matter of agreement, and the statement in the return and deed the settlement has been made by the parties, or any form importing compliance with the adjudication, will suffice in the return. Baudin vs. Roliffe, 1 N. S., p. 173. The attorney of the seizing creditor present at the sale did not require the sheriff to exact the cash, and was content the sheriff should await compliance with the bid, relying on the compliance by the purchaser with his bid. Then followed negotiation between the attorneys of the intervening creditors, representing also the ostensible adjudicatee, whose part in all the transactions connected with the sale appears to have been only nominal. That negotiation resulted in a note from the attorney for the seizing creditor to the sheriff, countermanding a previous order to readvertise the property and stating the matter of the adjudication had been arranged. We must hold in view of this action of the attorney of the seizing creditor substituting an agreed settlement instead of a resale of the property is a complete defence to so much of the specifications as seek to remove the sheriff for not exacting cash for the bid.

The settlement agreed upon was the execution of a deed by the sheriff to a party selected to take the place of the adjudicatee who had not complied with his bid. The next step was, this selected adjudicatee receiving the deed from the sheriff was to convey to one of the attorneys of the intervening creditors and the attorney was to execute his notes to the amount of twenty-five thousand dollars, deliver them to the seizing creditor on account of his debt. All this was carried out with the approval of the attorney of the seizing creditor, not as he testifies, he preferred it, but because it was the

best he could do.   Still we do not think the sheriff should be re-
moved, because rather than re-advertise and resell, with the river
then at a menacing height apt to deter buyers, another method
of settling the debt of the creditor was adopted.   There remained
after the delivery of the notes a balance of twelve thousand five
hundred dollars accruing to the creditor, if the opposition of the
intervening creditors were disallowed, but the oppositions with
the order of the court to retain the amount in the sheriff's
hands suspended the distribution of the fund.   It is with ref-
erence to this twelve thousand five hundred dollars the charge of
the false return is made.   The return occurs in connection with the
selected adjudicatee and in the deed to him.   This return and deed
must necessarily have been nominal.   The selected adjudicatee never
bid, never paid any money, and was interposed merely to receive the
deed and at once convey to the attorney of the intervening creditors,
who in turn was to execute and deliver the notes to the amount of
twenty-five thousand dollars to the seizing creditor.   It was part of
the plan agreed on between the attorneys that the sheriff should
make this nominal deed.   The sheriff's deputy testifies to the prep-
aration of the deed, and, to show compliance with the adjudication,
recited the price had been paid in the sheriff's hands when not a dol-
lar had come into his hands.   It seems to us it would be harsh to
hold the sheriff for the grave penalty of removal, because of the ex-
ecution of this deed understood by all parties as nominal in respect to
payment of any price.   The attorney for the seizing creditor ex-
amined the deed and was of course aware he was to get notes
for twenty-five thousand dollars instead of cash the deed recited
was paid.   The twenty-five thousand dollars was the greater part of
the debt of the seizing creditor and of the price of adjudication.   The
attorney testifies he supposed the sheriff had in his hands the
twelve thousand five hundred dollars and was assured of it by him.
On the other hand, the attorney for the intervening creditors testi-
fies it was agreed the twelve thousand five hundred dollars was not
to be paid to the sheriff.   The sheriff had no special instructions
from the attorney of the seizing creditor.   He was certainly not ap-
prised that the attorney who purchased besides executing the notes
was to pay the twelve thousand five hundred dollars. It would come
from no person else. On the contrary, the sheriff was assured by that
attorney it was not to be paid.   Under all circumstances we think

the sheriff might well infer that with the execution of the nominal deed and necessarily nominal return his function ended. Considering his belief in this respect apt to be produced by the action of all parties, and in view of the assurance from the attorney of the intervening creditors, on the faith of which the sheriff appears to have acted, we do not think he should be punished with the deprivation of his office.

The sequel of all these complicated phases for the simplicity of the usual legal proceedings to recover a debt by a seizure and sale was finally, that the creditor receiving no money was compelled to take the property for the debt he hoped to recover when he issued his writ. He gets the property by another constructive conveyance added to the labyrinth disclosed by the record. One of these last transfers is by the attorney who purchased, who after holding the property a year conveys to an interposed party, who in turn conveys to the seizing creditor. In both transfers the price is nominal, the real purpose being to give the unfortunate creditor the property in lieu of the .debt he sought to recover. In these last transactions the sheriff obtained a receipt from the attorney of the seizing creditor in effect releasing the sheriff from liability from his returns that the money was in his hands, the attorney, however, stating to him the receipt as open to explanation at all times the real facts may be required to be disclosed.

While holding that under the peculiar circumstances of this case there is no basis to remove the sheriff, we feel called on to state that as the fourth specification charging perjury in his testimony is not before us we have not felt at liberty to comment on that testimony. It is proper to say, too, that sheriffs should be careful in stating in their returns the method of settling the price of adjudication. The return should conform to the fact. If cash is not paid and a settlement made in accordance with the arrangement of parties, the sheriff should have instructions from the attorneys in interest, and state the settlement in conformity with the instructions. The attorney for the seizing creditor gave no such instructions. He testifies he supposed the sheriff had in his hands the twelve thousand five hundred dollars. If the sheriff had made inquiry of the attorney of the seizing creditor the trouble would not be before this court which this record presents. We hold the sheriff absolved from the penalty this suit seeks to enforce, because of his supposition the parties had arranged

their issues, and that arrangement, we think, he might be excused for inferring from all that passed. It has weighed with us, too, that the effect of his return was to charge himself with a large amount he never received and he could not profit by the transaction. We part with the record with the comment that it is not calculated to enhance the appreciation of the administration of justice, and it is to be hoped that the admonition herein conveyed will be serviceable.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.

## ON APPLICATON FOR REHEARING.

WATKINS, J. This application rests, mainly, on the proposition that the court erred in not sustaining the first three charges and removing the respondent from office. As this is the second appearance of this cause in this court we will merely refer to those charges as they are fully set out in our former opinion (45 An. 1351), the substance of same being: (1) that respondent failed to sell property for *cash* as required by the writ of seizure and sale; (2) that he made a false return on said writ, to the effect that he had sold the plantation for cash, when, in point of fact, he had not; and (3) that he executed a deed of sale to the purchaser, reciting that the *cash* had been received by him, when in fact he had not received the cash or any part thereof.

The charge is distinctly made that the aforesaid return was false and fraudulent, and that the deed of sale was false and fraudulent, and that respondent was thereby guilty of misfeasance, corruption and gross misconduct in office and should be removed.

On the argument on this application the further points were made and insisted upon: (1) that respondent had made a statement to the counsel of the seizing creditor that he had a *portion* of the funds in his hands when such was not the case, and upon this false statement the attorney acted in making a compromise settlement of the mortgage debt he would not have otherwise made; (2) that on the trial of the rule to distribute proceeds of sale the respondent falsely stated on oath that he had in possession a certain portion of the proceeds of sale in cash, when in fact he had not, and that notwithstanding this last charge was on defendant's exception rejected on the first trial, yet it may be still considered for the purpose of showing *animus* in the perpetration of these charges that are remaining for trial.

The other specifications of misconduct on the part of the respond-ent—the fifth, sixth, seventh and eighth—are not insisted upon at this time.

In our opinion we held that the fourth charge assigning the perjury had passed out of the case, and for that reason we could not consider or comment on the testimony appertaining thereto; and counsel for the relator now insist that in thus ruling we have ignored "one of the strongest pieces of evidence which proves the *intent and motive* of the defendant in making the false deed and return, and that it ought to have left no doubt in (our) minds as to the *criminal intent of the defendant* and his consequent guilt." (Our italics.)

In our view all this may be conceded and our opinion in this case be perfectly consistent and correct, because we had in our previous opinion sustained an exception to this charge and it passed out of the case; and, as we said in our opinion in this case, "the specification charging perjury in his testimony is not before us, (and) we have not felt at liberty to comment on that testimony."

In this view the opinion of the court is unchanged, and leaving this charge out of consideration there is no aggravation for the charges remaining.

The case presented is that of a sheriff holding in his hands a writ of seizure and sale directing him to sell certain mortgaged property for cash, and which he advertised and ostensibly sold for cash.

Being enjoined by other creditors claiming a superior lien upon the proceeds of sale from paying over a portion thereof, he made and filed a return stating that said portion of the proceeds were in his hands, and executed a deed of sale to the adjudicatee, reciting that the price had been paid in cash—though the deed was not filed or registered at the time.

While the fact is, that no cash was actually and really paid to the sheriff at all, the sheriff having acted on the advice of counsel of the opponents in making the deed as well as the return, and upon their personal assurance that they would put him in funds whenever same was required; and while the deed was executed as though the cash was to have been paid by the adjudicatee, the payment was postponed for a few days with the consent of the seizing creditor, and before the date agreed upon for the payment had arrived a

compromise settlement was effected, whereby the creditor accepted notes in settlement of the purchase price.

Acting on the theory, doubtless, that the return was in *substantial* compliance with the law and satisfactory to the attorneys of the opponents, the sheriff repeated to the attorney for the seizing creditor that he had in his hands that portion of the proceeds representing the claims of the third opponents, and this may have exercised some influence in bringing the settlement about.

But, conceding this to be true, the fact remains that when the oppositions were decided the funds applicable thereto were promptly paid over and no one suffered any injury, and all of the parties occupy the same relative positions they each would have occupied if the funds had been actually placed in the sheriff's hands—the residue of the purchase price having been discharged by notes satisfactory to the seizing creditor.

Our conclusion is, that while all the charges under consideration are *literally* and *technically* true, yet they are necessarily subordinated to the circumstances and surroundings of that case—the sheriff having yielded to the suggestions of others and suffered himself to be controlled too far, by the advice of counsel, in accepting a *consent* to employ the forms of law in his return, instead of requiring the cash to be really and actually paid by the adjudicatee according to the order of court and terms of sale.

While no injury was done and no wrong was intended by the respondent we can not allow the opportunity to pass without expressing our unqualified disapprobation of the course he pursued, and thus give him full and timely warning against similar practices in the future.

Rehearing refused.