**Ron ROWE and J.W. Reed, County Commissioners of Johnston County, Oklahoma, Appellants,**

v.

**GRAND JURY OF JOHNSTON COUNTY, State of Oklahoma, Appellees.**

No. 61431.

Supreme Court of Oklahoma.

Oct. 8, 1985.

Burke Mordy, Ardmore, for appellants.

Michael C. Turpen, Atty. Gen. of Okl., Oklahoma City, for appellees.

SUMMERS, Justice.

The Johnston County Grand Jury returned Accusations for Removal against County Commissioners Ron Rowe and J.W. Reed for wilful neglect of duty. The Accusations alleged that they allowed an abstract company to utilize the facilities of the county courthouse excessively. Be-

cause the county was neither paid rent nor was it reimbursed for utilities the Grand Jury alleged that such was in violation of the Constitution of the State of Oklahoma, Article X, §§ 15 and 17, prohibiting public funds from being used in support of a private business.

Each Commissioner demurred and the demurrers were overruled. The Accusations for Removal were consolidated for trial and the case was heard before a jury which found the Commissioners guilty on November 8, 1983.

On November 18, 1983, the trial court pronounced judgment which ordered each Commissioner removed from office. A petition in error was timely filed in this Court.

We must first determine whether the facts in this case support a removal based on wilful neglect of duty. For years the abstract company had a full time employee in the County Clerk's office. Two years before the trial she was moved into a small room just off the Clerk's office. Her telephone traffic increased to such an extent that in recent years the abstractor installed her very own phone in her work area. Arguably this work space was hers exclusively, although she had never closed the door or asked anyone to leave, nor did she have a key. She had been observed on occasions to have worked on mortgages and closed loans and had accepted some fees there in the Clerk's office. The abstractor had the phone to the courthouse shown in the phone book as a second number. She used the County Clerk's copy machine (but used her own paper) and paid ten cents per copy. There was testimony that abstractors in 33 of the 64 counties contacted occupied space in the courthouses which they considered to be theirs exclusively.

The courthouse at Tishomingo was crowded and this situation had become a bone of some contention. The Commissioners had received an Attorney General's opinion (State's Exhibit No. 3) dated April 12, 1982 which said they could not charge rent from the abstractor. The Attorney General's opinion relied upon *Tarrant Co., Tex. v. Rattikin Title Co.,* 199 S.W.2d 269 (Tex.1947), and *Shelby Co. v. Memphis Abstract Co.,* 140 Tenn. 74, 203 S.W. 339, (1918) for this proposition. (Apparently the trial court agreed with the Attorney General because his Instruction No. 6 told the jury "The County may not charge rent for the space or use of space discussed above.") But the Commissioners had also received an opinion from their own District Attorney (State's Exhibit No. 4) dated January 20, 1983 which said they "may and should charge the rent". They also knew that 1 O.S. 1981 § 2 (since repealed) provided that abstractors

"... shall have free access to the county records ... for the purpose of the prosecution of their said business of abstracting."

On February 28, 1983, in an open meeting, the third Commissioner moved to ask the Tishomingo Abstract Company to vacate the premises in the courthouse. Commissioners Rowe and Reed voted nay. The abstractor stayed.

The Grand Jury accusations were for "... allowing over a period of years the Tishomingo Abstract Company, a private corporation, to utilize facilities of the county courthouse as an office for said private business without the payment of rent; [sic] reimbursement for utilities or any other compensation paid to county in allowing public funds to be used to support private business in violation of the Constitution of the State of Oklahoma, Article X, § 15 and 17 and refusing to take action to remove said business from the courthouse when he was made aware of the situation and the law."

The Grand Jury also accused the County Clerk of "gross partiality" in charging the abstractor only ten cents for copies instead of the statutory one dollar.[1] Her ouster case was dismissed on a demurrer, however, because the accusation incorrectly referred to her as *Court* Clerk.

---

1. See 28 O.S. 1981 § 32.

This court has previously fixed the standards applicable to an action for removal of a public officer for wilful neglect of duty. In *Phillips v. State*,[2] the sheriff bet on an election in violation of a statute making that a misdemeanor. Needless to say he did not arrest the man with whom he bet. A Grand Jury accused him of wilful neglect of duty, and he was removed after jury trial.

On appeal this court reversed, saying: "It is not every neglectful official act of an officer that will authorize his removal. The word 'willful' is not without meaning. Let us examine the authorities as to the meaning of 'willful,' as applies to an act of an officer. 22 Ruling Case Law, 281, in discussing the subject, states: 'An Act is considered done willfully when it is done with a bad or evil purpose, or when the officer conscientiously acts contrary to a sworn duty; but conduct may be voluntary, thoughtless, or even reckless, without necessarily being willful.' Defining 'willfulness' in an action to remove an officer, the Iowa court used the following language:

'Every voluntary act of a human being is intentional; but generally speaking, a voluntary act becomes willful in law only when it involves some degree of conscious wrong or evil purpose upon the part of the actor, or at least an inexcusable carelessness on his part, whether the act be right or wrong.' *State v. Meek*, 148 Iowa 671, 127 N.W. 1023, 31 L.R.A. (N.S.) 566, Ann.Cas. 1912C, 1075." [3]

Remarkably similar to our case is *Shields v. State*.[4] Defendant Police Commissioner was tried and removed for wilful maladministration. His sins? He allowed the operation of a lunch stand in the police station without payment of rent. The American Legion was allowed to operate a vending machine there also without rent. A Coca Cola vending machine was installed at the request of the Fraternal Order of Police. The Coca Cola Company paid rent checks to a special police fund administered by the defendant. With this money he bought flowers for sick policemen and their relatives. Each Memorial Day he decorated with flowers a plaque in memory of policemen slain on the job, and he used the funds for other small things of a charitable nature. All agreed that (1) while the City of Tulsa got no rent money, (2) the defendant appropriated none of it to his personal use.

On appeal this court relied heavily on *Phillips* supra, pointing out that the meaning of the word "wilful" should be the same in "wilful maladministration" as it is in "wilful neglect of duty". The court recognized that the correctness of the judgment depended on whether the evidence showed that the defendant acted for a bad or evil purpose. The court quoted with approval from *State v. Wilson*,[5] a Kansas case:

"The statute is not designed for the removal of an officer merely for the improvement of the public service, because he has been inefficient and has acted with bad judgment. It is essentially penal in its nature and is to be construed accordingly. The word 'wilful'—'is sometimes held to be equivalent to "intentional" or "designed," and not to require a wrongful intention or malice, but generally, when employed in a penal statute, it indicates a bad or corrupt purpose, an evil intent without reasonable grounds to believe the action is lawful.'" [6]

The test, then, in an action for removal for wilful neglect of duty in Oklahoma was set forth by this Court as follows:

"We therefore say that the rule of measurement by which the guilt or innocence of the defendant must be determined requires that before defendant be legally pronounced guilty of wilful maladministration in office the acts relied upon to

---

**2.** 75 Okl. 46, 181 P. 713 (1919).

**3.** Id. 181 P. at 714.

**4.** 184 Okl. 618, 89 P.2d 756 (1941).

**5.** 128 Kan. 641, 196 P. 758 (1921).

**6.** Supra note 4, 196 P. at 761.

sustain that charge must have been committed with a bad or evil intent or for a bad or evil purpose; and that if said acts are merely thoughtless, or exhibit only an error of judgment, with no bad or evil purpose, they do not constitute wilful maladministration in office." [7]

There is no evidence in our case as to the motives of Rowe and Reed. There is not even a suggestion that either of them profited from having the abstractor in the courthouse. It is impossible to discover any evil purpose connected with their actions or inactions. It might be argued that surely they benefited from the good will of the abstractor's management. This court in *Shields* addressed that very contention:

"We do not agree with the trial judge that: 'It is an irresistible conclusion that the fund was being used for the good will of the Police Commissioner himself'. While the defendant may reasonably be suspected of not being averse to whatever political approval he may indirectly have received from the few trivial instances of 'good will' achieved outside of the police department, as described above, those instances after all create nothing but suspicion. Probably no public official ever resented good will resulting directly or indirectly from any of his acts, official or otherwise. So long as said acts do not amount to corruption, wilful maladministration in office or the like as properly defined by the law, mere suspicion as to his motive which is thereby created cannot outweigh the presumption of innocence. Removal from office must rest on a more solid foundation." [8]

By this opinion we make no finding as to whether the abstract company did or did not enjoy space and privileges in excess of what is statutorily or constitutionally permissible. That is not the question before us. Our inquiry here is limited to an examination of the evidence in light of the standards as set out herein which are required in an action for removal based on wilful neglect of duty.

Based on those standards as given by *Phillips* and refined by *Shields* we find the evidence and all reasonable inferences therefrom to be wholly insufficient to support the verdict and judgment for removal in this case. Because the trial court's error in overruling demurrers to the evidence requires reversal, we do not address the other matters presented on appeal.

Orders of Removal dated November 18, 1983 are hereby vacated and the case remanded with directions to enter judgment for the defendants.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., disqualified.