STATE OF IOWA ex rel., Appellant, v. R. E. CANNING, Appellee.

NOVEMBER 20, 1928,

1350

*Anderson & Perry*, for appellant.

*Miller & Everett*, for appellee.

FAVILLE, J.—I.   Section 1091, Code of 1927, provides for the removal of certain officers, upon various grounds, one of which is: "For willful misconduct or maladministration in office."   This proceeding is brought under this section of the statute.   No useful purpose would be served by an extensive recital of the evidence respecting the different items upon which the claim of maladministration is predicated.   We shall refer to them but briefly.

It is charged that the appellee, while acting as a member of the board of supervisors of Monroe County, sold a certain house in the town of Hiteman, Iowa, which belonged to the heirs of one Ellis, deceased, and in which property one Mary Jane Ellis had a life estate; that at said time the said Mary Jane Ellis was an insane inmate of the county farm of Monroe County; and that said house was sold by the appellee without any authority of law, and without the appointment of a guardian for the said Mary Jane Ellis, and without any authority from the administrator or heirs of the estate of the decedent.   The only question we can consider in respect to this item is whether the appellee was guilty of any official misconduct in relation thereto.   It appears that the property sold for $20 or $25, and that the money was paid into the county treasury.   Whether a good title passed to the purchaser of the premises is a matter with which we have no concern, but the record fails to disclose any corrupt or improper conduct on the part of the appellee in connection with this item.

It is contended that the appellee, as a member of the board of supervisors, was instrumental in procuring the laying of a certain tile drain for the purpose of draining the public highway across a farm belonging to two brothers of the appellee's, and

that, in so doing, the appellee caused the tile to be laid at a greater depth across said farm than was essential to furnish proper drainage for the road, and that, because the tile were laid at a greater depth than was necessary, it facilitated in the draining of the farm lands belonging to the brothers of the appellee. We are satisfied from the record that the manner of the construction of this tile drain and the depth at which it should be placed was an engineering project which was planned by the county engineer, and the testimony satisfactorily establishes that the work was done in a proper and efficient manner for the drainage of the public highway. It may be that an incidental benefit resulted to the farm belonging to the brothers of the appellee, by reason of the fact that the tile were necessarily carried across their farm, in order to properly drain the public road, but it entirely fails to establish any official willful misconduct or corruption on the part of the appellee in connection therewith.

It is charged that the appellee was guilty of misconduct and maladministration in his office because, as contended, he voted to purchase certain road machinery the bid for which was higher than that of other bidders for other machinery. The evidence in regard to this transaction tends to show that there was before the board of supervisors the consideration of two different styles of road machinery, of different weights and of different value. There is some doubt in the record as to the difference in price between the two sets of machinery when the freight upon the same is taken into consideration. It appears that two members of the board of supervisors voted to purchase one style of machinery, and that the appellee voted to purchase the other style. We do not find evidence of any corruption whatever on the part of the appellee in connection with said matter. It was a matter for the exercise of discretion and judgment, and we find nothing in the record to impeach the official conduct of the appellee in connection with said transaction.

Evidence was offered respecting alleged misconduct of the appellee in the expenditure of public funds on a certain road, the claim being that useless and unnecessary work was done. Assuming that this was a proper matter for consideration, under the issues, we find nothing in the record that would warrant the conclusion that the appellee was guilty of misconduct or mal-

administration in connection with the expenditure of public funds upon said road. There has been new construction upon the said road, and there is no evidence to support any conclusion that the appellee was guilty of a "useless waste of money" in connection therewith.

The main complaint in regard to appellee's official conduct relates to certain property which it is claimed the appellee unlawfully and improperly took from the county farm and appropriated to his own use. It is the contention of the relators that the appellee at one time took a ham and a fifty-pound can of lard from the county farm to his own home, and used it, and that he subsequently repeated the same transaction, and took another ham and another can of lard from said farm for his own use. With regard to one of said alleged transactions, we find that the same was not established by the evidence. There is such positive and unequivocal denial of the transaction, in which the appellee is corroborated, that the court would not be justified in holding, upon the record, that the appellee received the one ham and the can of lard as claimed.

With regard to the other ham and can of lard involved, which it is claimed the appellee misappropriated, the appellee concedes that he did receive a ham and a can of lard from the county farm. With regard to the ham, the transaction, as contended for by the appellee, is that he had been at the county farm, where he had been assisting the steward in some work, and that, as he was about to leave, the steward brought a ham to appellee's automobile, and made some remark about giving it to the appellee. The evidence tends to show that the appellee objected to receiving the ham, and that the steward was rather insistent that he take it, and placed it inside the appellee's car. The appellee concedes that he took it home, and that it was used in his family. The explanation of the appellee, and of his wife, who accompanied him at the time, was that they had no desire to antagonize or embarrass the steward by positive refusal to accept what appeared to be a gift from the steward. The appellee is corroborated in his contention in this respect by evidence which we deem worthy of belief. Respecting the question of the lard, it appears that the steward of the county farm took a fifty-pound can of lard to the appellee's home at a time when neither the appellee nor any member of his family was there, and left

the same in the garage. He explained afterward to appellee that the lard had become slightly burned, and that he thought the appellee might use it. The appellee used a portion of the lard, and the balance was thrown away with the garbage. Whether the steward of the poor farm intended that this ham and can of lard should be gifts from him personally to the appellee, for which he must account to the board of supervisors, is not altogether clear from the record; but we are not satisfied that the appellee was guilty of willful misconduct and maladministration of his office, or of corruption, in knowingly appropriating public property to his personal use. The evidence of the appellee as a witness upon another trial was offered in evidence in this case, and tends to show that he then made an explanation that he had rendered service for the county for which he had received no pay, equal to or in excess of the value of the ham and the can of lard. The appellee, as a member of the board of supervisors, had no legal right to furnish labor to the county and receive pay therefor (Code Section 13327), nor had he any legal right to appropriate any of the property that belonged to the county to his personal use. We think, however, under the entire record, that there was a failure to establish any willful corruption or maladministration of the office of a member of the board of supervisors on the part of the appellee. It is an oft-repeated statement that "a public office is a public trust," and the appellee, as a member of the board of supervisors, was bound to the most meticulous care in the administration of his office and in the handling of any public property that might come into his possession. There can be no condonement of willful misconduct or corruption in office, even though the amount involved may appear to be inconsequential and trivial. Peculation, as a badge of misconduct and corruption, is not to be measured by its extent or grossness. There must, however, be a willful intent to do wrong, or a maladministration of office, to warrant a summary removal of a public officer. From a careful reading of the record in this case we are persuaded that the trial court did not err in dismissing the relators' petition on the ground that there was a failure to establish willful misconduct or maladministration of a public office on the part of the appellee.

II. The trial court not only dismissed the relators' petition, but taxed the costs of the case to the relators, including an at-

torney's fee for the appellee's counsel. Code Section 1112 provides that, if the action is instituted upon complaint of citizens, and it appears to the court that there was no reasonable cause for filing the complaint, the expense may be taxed as costs against the complaining parties. The complaint was filed by the relators after the appellee had testified in another case in court, where he had admitted the fact of having received the ham and the can of lard referred to. The explanation made by him upon the trial of the instant case and the corroboration of his claim by other parties were not disclosed in the case referred to. Upon the record, we think it cannot fairly be said that the relators, in filing the complaint, acted without any probable cause in so doing. In *State ex rel. Gebrink v. Hospers*, 147 Iowa 712, we said:

"But, after some reflection, we are not fully satisfied that plaintiffs should be taxed with the costs. The proceeding, though prosecuted upon the relation of private citizens, is essentially one in which the relators stand in a representative capacity. They speak for the public and the law, and the courts take cognizance of their complaints, not to remedy their private wrongs, but to conserve public interests. It is a matter of good public policy that citizens instituting such proceedings in good faith, though upon mistaken premises, should not be deterred by personal risks from performing a disagreeable duty, and, so long as they act in good faith, we are of the opinion that the costs should be assessed as is done in ordinary state cases. Such appears to have been the legislative purpose, as expressed in the statute."

In the instant case, there is not such a showing of a want of good faith or probable cause as we think justified the taxation of the costs to the relators. It is a wholesome and salutary provision that makes it possible for five citizens of a county to file complaint against one whom they in good faith believe to have been guilty of willful misconduct or maladministration of a public office. Where they act with apparent good cause, and with reason to believe the complaint is justified, they should not be deterred from proceeding in such manner in the public interest by the threatened danger of being penalized by an assessment of costs and attorney's fees. We are of the opinion that the costs in the instant case should have been taxed against the

county, as provided by Section 1111, and not against the relators.

The costs in this court will be taxed one half to the county of Monroe and one half to the appellants. The order of the trial court will be modified, in so far as it provides for the taxation of costs of the trial in the court below and attorney's fees to the relators. In other respects, it is affirmed.—*Modified and affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.