STATE OF IOWA, ex rel. MAX E. DUCKWORTH, County Attorney, Woodbury County, Appellant, v. F. PRICE SMITH, County Treasurer, Woodbury County, Appellee.

No. 42584.

NOVEMBER 13, 1934.

Max E. Duckworth, County Attorney, and A. R. Strong, for appellant.

Yeaman & Yeaman and George A. Gorder, for appellee.

CLAUSSEN, J.— The defendant was elected county treasurer of Woodbury county at the general election in 1932. He took office in January of 1933. An examination of his accounts early in July, 1933, disclosed that he was then indebted to the county for funds withdrawn by him in the sum of $203.25. Such examination also disclosed that one John Milton, an employee of the treasurer's office, also had been withdrawing funds from the county treasurer's office,

but the exact amount of such withdrawals is not disclosed. The record is not long, but it is somewhat involved. It appears without dispute that between the time of the examination in July and the end of October of 1933, frequent examinations were made of the treasurer's accounts and that the condition of such account was the subject of discussion between the state checkers and the treasurer. Between July and November the treasurer took cash on more than twenty occasions, making the total amount withdrawn by him a sum nearly equaling $600. During the same period Milton withdrew funds on twenty different occasions, and his total withdrawals in that period of time were roughly $950. Scattered through these transactions were various checks drawn by Smith and Milton which seem to have invariably been returned when deposited, for lack of funds in the bank to take them up. These checks are significant in one aspect. They seem to indicate knowledge on the part of the drawers that the abstraction of funds from the treasurer's office was not proper.

Near the end of October two checks found their way into the treasurer's office. One was drawn on the Chase National Bank of New York in the sum of $1,000 payable to John Milton, Jr. The other was drawn on the Union Trust Company of Baltimore in the sum of $750 payable to Smith. These two checks were put in to take up the withdrawals of Smith and Milton. It appears that the difference between the amount of the checks and the withdrawals was taken out by some one in cash. Both checks came back dishonored. At the time of the trial the friendship existing at one time between Milton and Smith had given way to bitter enmity. Milton testified that he drew the checks and that Smith knew all about them. Smith denies that he knew that Milton drew the checks. It is really immaterial whether Smith knew that Milton drew the checks. Such knowledge could add but little to the picture of persistence with which Smith withdrew funds and covered the withdrawals with worthless checks and with which he permitted Milton to do the same.

Ultimately the item of $1,750, represented by these two checks, which in turn represented the cash taken by Smith and Milton, was restored to the county through a loan which Smith obtained from an uncle. This restoration was made shortly before this proceeding was filed, and after repeated conferences between Smith and the state checkers and the supervisors.

The record establishes clearly that Smith knew of the Milton withdrawals and that the funds taken by Smith were used for his private purposes.

The use of public money by the defendant for his private purposes was both unlawful and a crime. Code, sections 13027 and 7402. The record indicates that the defendant repeatedly took money from the funds in his office for his private use, and that he persisted in so doing after the state checkers called his attention to the illegality of his acts and the certainty of ruin if he did not cease.

The petition seeks the removal of the defendant for willful misconduct and maladministration of office.

For willful misconduct or maladministration of office, Smith might be removed. Code, section 1091.

The use of the county funds by Smith was misconduct on his part. He contends, however, that it was not willful in the sense required by the statute as construed by this court in State ex rel. Fletcher v. Naumann, 213 Iowa 418, 239 N. W. 93, 81 A. L. R. 483; State ex rel. v. Meek, 148 Iowa 671, 127 N. W. 1023, 31 L. R. A. (N. S.) 566, Ann. Cas. 1912C, 1075; State ex rel. v. Zeigler, 199 Iowa 392, 202 N. W. 94; and State ex rel. v. Canning, 206 Iowa 1349, 221 N. W. 923. The cases relied upon by Smith require no further discussion than to suggest that neither they nor any other decision of this court require as an essential element of willfulness a greater *scienter* in the doing of an act than the character of the act permits. We may illustrate by suggesting that the unlawful taking of money by a public officer cannot well have the heinous aspect of rape, or the atrociousness of murder by lying in wait. Still, it is certain that public money may be taken by a public officer both wrongfully and willfully. In the case before us the defendant took public money and used it for his private purposes. This was a wrongful taking under the statute. He did this frequently. He persisted in this after he had been told that such action was unlawful. He took money more than twenty times. It cannot be said that he took the money under mistake. He took money after being warned by the state checkers. We are at a loss to discover any worthy motive which could have prompted him to take public money for his private use. To these acts on the part of Smith must be added the various check transactions and the Milton cash transactions. The whole picture presents a case in which "willfulness"

must be found to be present, even under the definition of the term contended for by appellee.

It is beside the point to say that Smith's bondsmen must make good any loss that the public might sustain, and that Smith finally made good his peculations. These matters have nothing to do with the character of the acts committed by Smith. It is still the fact that Smith wrongfully and persistently took public money for his private use, even though the bonding company was liable for his acts and in spite of the fact that he ultimately made good his shortage. Smith started a suit, now pending in this court, involving the amount of his salary. For a time he refused to accept his salary warrants. It is beside the point to say that the county may have owed him salary during part of the time that he was taking public funds, for the salary of the treasurer must be paid on warrants drawn by the county auditor. The treasurer cannot help himself to public funds even in payment of his salary.

We think the trial court was in error in dismissing the petition. ▮ An order was made by the trial court allowing the attorneys for Smith counsel fees. A reversal of the judgment on the petition will carry with it a reversal of the order in relation to counsel fees.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for the entry of judgment removing the defendant from the office of county treasurer of Woodbury county, Iowa. The order allowing defendant's counsel attorney's fees is reversed and set aside. A motion to allow fees for defendant's counsel in this court is overruled. Appellee's motion to dismiss the appeal, submitted with the case, is overruled. It is ordered that procedendo issue hereon forthwith.—Reversed and remanded, with directions.

MITCHELL, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.