State of Iowa, Appellant, v. Louis J. Roth and James M. Carl, Appellees.

Appeal: reviewable questions. A cause will be disposed of on appeal on the same theory on which it was tried in the district court. Thus where an action brought to remove the officers of a city for refusal to prevent the playing of professional base ball on Sunday was tried on the theory that Sunday base ball is in itself illegal, it will be disposed of on appeal on the same theory.

Municipal officers: removal: wilful neglect of duty: evidence. The officers of a city under the commission form of government will not be removed from office for wilfully refusing or neglecting to institute prosecutions to prevent the playing of professional base ball on Sunday, where they acted in good faith and in reliance upon the advice of the legal department of the city that it was not illegal, and the question had not been settled in the courts but was the subject of an honest difference of opinion among attorneys; the term wilful refusal or neglect of duty meaning an intentional, deliberate or evil purpose, contrary to a known duty.

Same: authority to file information: removal: defenses. The mayor of a city may file an information charging the violation of the municipal code, or may direct it to be done, although he acts in a judicial capacity in thereafter trying a case for the violation of an ordinance; and the fact that it was customary for some one else to institute prosecutions would not of itself be a defense to a proceeding for his removal because of refusal to do so, but under the facts of this case was a proper circumstance to be considered. Nor will the order of a superior officer of the chief of police constitute a defense to an action for his removal, where such order was in conflict with his legal duty.

*Appeal from Linn District Court.*—Hon. W. N. Treichler, Judge.

SATURDAY, DECEMBER 13, 1913.

SUIT brought in the name of the State, at the relation of seven qualified electors, for the removal of defendant Roth as Mayor of the City of Cedar Rapids, and Carl, as Marshal, or Chief of Police, of that city. The trial court refused to remove them, and the State appeals.—*Affirmed.*

*George Cosson,* Attorney General, and *L. M. Kratz* and *G. P. Linville,* County Attorney, for the State.

*Wm. Chamberlain,* City Solicitor, and *C. F Luberger,* Assistant City Solicitor, for appellees.

PRESTON, J.—No objection is made to the joinder of the two defendants in one action. It appears that in the spring of 1913 there was more or less agitation over the question of Sunday baseball in the city of Cedar Rapids. About March 28, 1913, and, as we understand it, before the league season opened, a petition, signed by about fifty men and women, was presented to the mayor and commissioners of Cedar Rapids. It is as follows, omitting signatures:

To the Hon. Mayor and City Commissioners: We, the undersigned residents, citizens, and property owners of the city of Cedar Rapids, hereby respectfully request your honorable body to prevent the playing of baseball within the city limits of the city of Cedar Rapids on Sundays, on the ground that the playing of ball on Sunday, or the Sabbath, is a violation of the law, and also on the grounds that the playing of ball on Sunday causes a disturbance of the peace, and constitutes a nuisance by reason of noise, and, further, because it is detrimental to property in the neighborhood in which such game is played upon the Sabbath day. We, the undersigned, therefore respectfully ask your honorable body to take such steps as may be necessary to prevent the playing of ball on Sunday, or the Sabbath, for the reasons aforesaid.

It was presented at a meeting of the commissioners. Mr.

L. M. Kratz appeared as their attorney at the meeting, and made an argument against Sunday baseball. The action was brought by him as attorney, and the trials in the district court and in this court have been conducted by him.

The action was commenced May 14, 1913, and it is alleged in the petition, among other things: That each of said officers, defendants herein, in violation of the oaths of their respective offices, and in disregard of the specific duties imposed by law upon such officers, both of said defendants, have neglected and still neglect, have refused and still refuse, to perform the duties of their respective offices, in violation of the laws of the state of Iowa, and the ordinances of the said city of Cedar Rapids, in the following specific particulars, to wit: The playing of professional baseball by salaried players, and, where paid admissions were charged, have been allowed and permitted by said public officials, with their full knowledge and consent, within the limits of the said city of Cedar Rapids, Linn county, Iowa, on the first day of the week, commonly called Sunday, creating a breach of the peace, disturbing private families, and against the statutes of the state of Iowa and the ordinances of the city of Cedar Rapids, and against the peace and dignity of the state. That both of said defendants have willfully neglected and still willfully neglect to perform the specific duties of their public offices, and fail and neglect to enforce the laws of the state and the ordinances of said city against such violations of the law, and both of said defendants have refused, although specially requested by more than fifty petitioners and residents of said county and city, who are most affected and disturbed by such violations of the law, and still refuse to perform the said specific duties of their respective offices as peace officers of the state of Iowa and of said city of Cedar Rapids.

Defendants answered separately. Defendant Roth, after admitting his election, and denying the charges as to his alleged neglect of duty says:

That certain persons, among others one L. M. Kratz, of the city of Cedar Rapids, Iowa, and C. F. Wolff, of said city, did call upon this answering defendant and upon the council of said city of Cedar Rapids, Iowa, and demand that this said defendant and the city council immediately take action to suppress the playing of baseball, within the city of Cedar Rapids upon Sunday. That thereafter, and in pursuance of the demand of said L. M. Kratz and others, including some of the complainants herein, this defendant did at once refer the matter to C. F. Luberger, assistant city solicitor of the city of Cedar Rapids, Iowa, one of the regularly appointed and acting legal officials of the said city who has charge of all prosecutions arising under the city ordinances of the said city and of all matters pertaining to the police department of said city, with instructions to proceed in said matters according to law, and to commence prosecutions therefor, if, in the opinion of said C. F. Luberger, assistant city solicitor, either the ordinances of the city of Cedar Rapids, Iowa, or the statutes of the state of Iowa, were violated by the playing of Sunday baseball within said city. That the said C. F. Luberger did thereupon make a complete and thorough investigation of the said statutes of the state of Iowa and the ordinances of said city in reference to the playing of baseball within said city on Sunday, and did report to this defendant and the city council of said city that the playing of baseball, either amateur or professional, in the city of Cedar Rapids upon Sunday constituted no infraction of the laws of the state of Iowa or of the ordinances of the city of Cedar Rapids, Iowa.

Paragraph 4. That this defendant is not a lawyer, nor learned in the law, having for many years prior to his election as mayor of the city of Cedar Rapids followed the occupation of traveling salesman, and he is of necessity obliged in all legal matters to rely upon the advice of the legal officers of said city. That the said C. F. Luberger is a graduate of the State University of Iowa, and is, as this answering defendant believes, an industrious and learned young lawyer of excellent standing at the bar. This answering defendant did further, however, request the city solicitor, William Chamberlain, to review the opinion of Mr. Luberger, and the city solicitor did thereafter report to defendant that he had done so, and that he believed said opinion to be correct, and had approved the same, and had approved Mr. Luberger's course in declining to file informations against the said ball players, charging a viola-

tion of the statutes of Iowa; that, in so submitting said matter to the lawful attorneys of said city for such action as the law required, he acted in perfect good faith and in the usual, lawful, and customary course of procedure as followed by the mayors of said city; that it has never been the custom in the city of Cedar Rapids, Iowa, or in any of the other cities of the state of Iowa, as far as this defendant has learned, for the mayor of said city to personally file informations or conduct prosecutions for violations of either state laws or city ordinances, but that such matters have always been referred to the legal officials of the city for action thereon, and that, in so referring the said matter to the said legal officials of said city, this defendant acted in good faith and in full reliance upon the recognized and existing custom and manner of conducting the official business of said city; that in all of said matters this defendant has acted in good faith, with the full intent and purpose to uphold the Constitutions of the United States and of the state of Iowa, enforce all the laws of the state of Iowa and all the ordinances of the city of Cedar Rapids.

The answer of defendant Carl is similar, and contains the following additional allegations:

That he holds his appointment from the city council of said city, and is subject to removal by said city council at any time they may see fit, in their discretion, so to do. That one C. F. Wolff, of said city, did call upon this answering defendant, and demand that this defendant immediately take action to suppress the playing of baseball within the city of Cedar Rapids, Iowa, upon Sunday. That this defendant was aware that baseball had been played upon Sunday in the city of Cedar Rapids, Iowa, for many years, without any prosecutions having been instituted on account thereof, and that it had been and was being played at the time said demand was made upon this defendant in practically all of the larger cities of the state of Iowa, including the city of Des Moines, the capital city of said state and the place of official residence of the Governor of said state and the Attorney General thereof, and that no prosecutions have been instituted against the playing of Sunday baseball in any of said cities by any of the officials thereof or of any of the officers of the state of Iowa. That on account thereof this answering defendant was in

doubt as to whether or not the said playing of baseball upon Sunday constituted a violation of any of the laws of said city or of the state of Iowa, and he thereupon reported said matters to the superintendent of the department of public safety in said city, the superior officer of this defendant, and requested the said superintendent of department of public safety to procure an opinion upon said matters from the legal officers of said city.

Paragraph 4. That within a few days thereafter the said superintendent of the department of public safety, to wit, Mr. Allen McDuff, the superior officer of this answering defendant, did report to this defendant that, in the opinion of the legal department of said city, the playing of baseball on Sunday constituted no infraction of the laws of the state of Iowa or of the city of Cedar Rapids, and that this defendant should govern himself accordingly in said matters.

Paragraph 5. That this defendant is not a lawyer or learned in the law, and it is a part of his duty upon all matters of this nature to follow and abide by the advice of the properly constituted legal officers of the said city, and that, in following the instructions and advice of the said officers, and particularly the instructions of his superior officer, the superintendent of the department of public safety of said city, he acted in perfect good faith and in the usual, lawful, and customary manner as followed by the chiefs of police of the said city.

It is alleged and shown that Cedar Rapids is a city of the first class, organized under Chapter 48, Acts of the 32d Generally Assembly, and acts amendatory thereof.

We have set out these matters more fully than is strictly necessary, perhaps; but it is done for the purpose of showing that the real contention was as to the playing of Sunday base-

1. APPEAL: reviewable questions.

ball as such, and as to whether defendants should be removed for failure to stop it. The evidence taken some months after and the arguments in this court have taken a somewhat broader scope, and it is now claimed that the ball playing disturbed religious worship of a family in the neighborhood, and that the noise constituted a nuisance. It is not shown that the defendants had any knowledge of the religious meeting.

As stated, the petition to the city council was presented to the council before the ball season opened, and the statement therein as to ball playing causing a disturbance and being a nuisance is necessarily a conclusion that it would be so. The case seems to have been tried by all parties on the theory suggested, and it should be so tried here.

The provisions of the Municipal Code of Cedar Rapids, so far as applicable to the points presented, are: That the mayor shall be the chief executive of the city, and, in addition to the powers and duties given him by the law, he shall take care that the criminal laws of the state and the ordinances of the city are duly respected, observed, and enforced within the city limits. . . . He shall be a conservator of the peace within the city, and may call to his assistance the city police, and, if necessary, may call upon any citizen of the city to aid him in quelling or preventing any riot, rout, or unlawful assembly, or in preventing or restraining any breach of the peace within the city. ''It shall be the duty of the marshal diligently to inquire into and report to the head of the department of public safety all violations of the city ordinances and the criminal laws of the state, all breaches of the peace, and to prosecute all persons guilty thereof; to arrest and take into custody, without warrant or process, any person who shall be found in any street or alley, market or other public place, in the state of intoxication, or doing any act in violation of the law or ordinances, or where a public offense has in fact been committed by any person that he has reasonable grounds for believing committeed it, and to bring such person before the superior court, or place him or her in the city jail, to be dealt with according to law; to execute all writs, process, and orders issued to him by the mayor, superior court, or city council, or other officer having power to issue the same, and make due return thereof according to law.''

Said Code also provides that the marshal shall have power to require the aid of any citizen or citizens of the city in making arrests or in the suppression of any riot or unlawful assembly, or in preventing violation of any ordinance.

It also provides:

Disturbing the Peace. 1. If any person, within the corporate limits of this city, willfully disturbs the peace and quiet of others by violent, tumultuous, offensive or obstreporous conduct or carriage, or by loud or unusual noises, or by unseemly, profane, obscene or offensive language calculated to provoke a breach of the peace, he shall be guilty of disturbing the peace. (Section 270, Municipal Code of Cedar Rapids.)

Same—On Premises. 2. If any person within the corporate limits of this city, suffers or permits any hallowing, quarreling, fighting or unusual noise or affray, or any act or conduct prohibited by the preceding section, in any house, or upon any premises, owned, occupied, possessed or controlled by him, in such a manner as to disturb the peace of others or the public quiet of the neighborhood or city, he shall be guilty of misdemeanor.

Plaintiff cites section 5040 of the Code which is as follows:

Sec. 5040. Breach of Sabbath. If any person be found on the first day of the week, commonly called Sunday, engaged in carrying firearms, dancing, hunting, shooting, horse racing, or in any manner disturbing a worshiping assembly or private family, or in buying or selling property of any kind, or in any labor except that of necessity or charity, he shall be fined not more than five nor less than one dollar, and be imprisoned in the county jail until the fine, with costs of prosecution, shall be paid; but nothing herein contained shall be construed to extend to those who conscientiously observe the seventh day of the week as the Sabbath, or to prevent persons traveling or families emigrating from pursuing their journey, or keepers of toll bridges, toll gates and ferrymen from attending the same.

And he contends that those who play the game for wages as an occupation, and who sell tickets, etc., are guilty of a violation of said section. He also claims that playing of baseball on Sunday, with its accompanying noise and confusion, is a breach of the peace under the laws of the state and the ordinances of the city. To sustain this last propostion, he cites

*Town of Neola v. Reichert,* 131 Iowa, 492, and cases from other states. An examination of that case shows that the question of baseball was not involved in the case. The acts charged were riotous conduct and the utterance of blasphemous language in a saloon. He also claims that the playing of baseball on Sunday, with accompanying disturbance of others, constitutes an unlawful assembly under the laws of the state of Iowa, citing Code, section 5030, and *State v. Johnson,* 89 Iowa, 594, and cases from other states. The *Johnson* case did not involve the question of baseball in any way; but the acts constituting the unlawful assembly were in a railway depot.

It is doubtless true that the playing of baseball may be a nuisance, or a breach of the peace, either on Sunday or week days; but, as stated, we think the theory of the trial was as to whether the playing of baseball on Sunday of itself was contrary to law. The allegations of the answers are sustained by the evidence.

At the time the petition was presented to the mayor and commissioners, the mayor, on behalf of the council, informed Mr. Kratz and the petitioners that the matter would be sub-

2. MUNICIPAL OFFICERS: removal: wilfull neglect of duty: evidence.

mitted to the legal department of the city for an opinion. Upon this point the mayor testified, in substance, as follows: That he listened carefully to the address of Mr. Kratz upon the occasion of the presenting of the petition, knowing that Mr. Kratz was a lawyer, and was presenting the matter as a legal proposition. That he (the mayor) has followed the occupation during his business life of a commercial traveler, and had never had occasion to study law, and was not learned in the law in any respect. That in his travels over the state for a period of more than twenty years he had learned from actual knowledge that baseball was played upon Sundays in almost all of the cities of the state without interference, and particularly in the city of Des Moines, which is the seat of the state government and the official place of residence of the Governor and Attorney General of the state of Iowa. That he was in doubt

as to whether or not the playing of baseball upon Sundays constituted any violation of the law, in view of the fact that it was constantly played in the state without interference either of the Governor, the Attorney General, or the various prosecuting attorneys, and, not being a lawyer, he believed it to be his duty to submit the matter to the regularly and legally established law officials of the city for their opinion. That in so doing he had no idea or intention whatever of evading the law against the playing of baseball upon Sundays, if it was contrary to the law, and that it was his intention, and he would have taken immediate steps, to have stopped the playing of baseball in the city on Sunday had the city's attorneys advised that such playing of baseball constituted a violation of the statutes of the state or the ordinances of the city. That he had never, since he had held the office of mayor, refused to follow the advice of the city attorney or his assistants upon any legal matter, and that he had no motive whatever in the matter except to see that the laws were observed. He further testified that the assistant city solicitor, who had full charge of all matters in police court and violation of criminal statutes, submitted to him a written opinion, to the effect that the playing of baseball within the city upon Sunday did not constitute any infraction of the laws of the state of Iowa or of the ordinances of the city, and that, in reliance upon this opinion, he declined to swear out informations against the managers or players, or institute any criminal proceedings against them. He further states that it was not the custom in the city of Cedar Rapids, and never had been as far as he knew, for the mayor in person to file informations against violators of the law. The violations of the state law had always been referred to the county attorney for prosecution, and of the city ordinances to the assistant city solicitor, who himself filed informations.

It further appeared from the testimony of Mr. Wolff that the mayor told Mr. Wolff, who was the spokesman and principal complainant against Sunday baseball, that, while he himself (the mayor) would not swear out informations against the

players and managers, for the reason that he was advised that
they had committed no offense against the law, yet if he (Mr.
Wolff) desired to swear out the informations, the police de-
partment of the city was at his service to have the warrants
served. This witness says (speaking to Mr. Chamberlain, the
city solicitor, who was cross-examining him) :

I went to you, and wanted you to advise the mayor, as he
wasn't a lawyer. He has always been a commercial man. The
mayor has always treated me all right. He never abused me
in any way. You two acted like gentlemen. I believe, as you
do, that the mayor of Cedar Rapids intends and expects to
enforce all the laws of the state and of the city of Cedar
Rapids, if he is so advised, and that, if he was advised that
anything was a breach of the law, and had a fair show, he
would do right and enforce the law. I believe his intentions
are good, but that he has been steered wrong, as he was by
your assistant. I have been to the county attorney about
this. I understand that he conducts the prosecutions for viola-
tion of state laws. I believe it is more a violation of the state
law than of the city law. What I wanted of the mayor was
that he swear out a warrant against the Sunday baseball play-
ers, or that he instruct the chief of police to swear out such a
warrant. The real dispute between us is that I wanted him
to swear out an information instead of doing it myself.

The mayor also testified: ''I informed Mr. Wolff that, if
his lawyers differed from our lawyers as to the law, neverthe-
less the police department was at his service to serve any war-
rants that he might see fit to have issued.''

Substantially the same testimony was given by the chief
of police, who testified further that, as chief of police, he is and
was subject to orders and discipline by his superior officer, Mr.
Allen McDuff, superintendent of the department of public
safety, and that, as a part of the duties of his office, he is and
was subject to obey all orders given him by Mr. McDuff, and
that Mr. McDuff had informed him that the assistant city solic-
itor, with the approval of the city solicitor, had rendered an
opinion to the council that Sunday baseball did not constitute

an infraction of the law, and that Mr. McDuff thereupon instructed him not to interfere with the playing of baseball upon Sunday, and that he observed the orders. He says: "I had to quit for disobeying orders, or be removed by Mr. Wolff if I did not obey him."

Mr. Carl further testified that he was instructed by Mr. McDuff that, if warrants were secured, he was to serve them through his department, and that he so informed Mr. Wolff. He also told Mr. Wolff where a warrant could be procured, and that, if he would procure one, it would be served immediately.

Mr. Luberger, the assistant city solicitor of the city of Cedar Rapids, was also a witness on behalf of the defendants, and testified: That he was a graduate of Dartmouth College, and of the law school of the State University of Iowa. That some time during the early spring of the year 1913 the city council requested him, as assistant city solicitor, to furnish them with an opinion with reference to the legality of the playing of baseball upon Sundays in Cedar Rapids. That he made an investigation of that subject, consulting the authorities and statutes, and examining particularly the authorities as found in the Supreme Courts of various states having statutes similar to our own, and satisfied himself fully upon the subject. That before giving his opinion to the council, he submitted it to the city solicitor, with whom he talked over all the points covered in the various cases which could be found, and that the city solicitor concurred with him, and said he thought his opinion was correct. That he thereupon gave it to the council as his opinion that, as a matter of law, the playing of baseball on Sunday is not within the prohibitions of that section of the Code known as breach of the Sabbath section, and that he also advised them that we had no ordinance covering baseball on Sunday, or the Sabbath. Mr. Luberger further testifies that it was within his duties to file informations and conduct prosecutions for violations of the city ordinances; that all violations of the state laws came within the duties of the county attorney

and were referred to the county attorney; that the mayor has never made a practice of filing informations.

Mr. Chamberlain, the city solicitor, testified to substantially the same as the last witness.

Witness Warren, who was also one of the petitioners, testified:

This matter is solely a matter of noise with me. I never made any complaint to the mayor or the chief of police about the disturbance of any meetings at my house. I have no personal feeling against the mayor and chief of police, and do not care to have them removed from office. If I knew of any other way of getting rid of the noise, it would be equally satisfactory to me, and I have no objection to the playing of baseball because it is played on Sunday.

It appears that defendants are reputable men. From the testimony of some relators themselves they believe defendants desire to and will do their full duty, if they know what that duty is. It may be defendants are in sympathy with Sunday baseball, and may have been somewhat reluctant, for that reason, and because of local public sentiment, to attempt to prevent it.

We are not called upon to determine the question as to whether Sunday baseball, as such, is unlawful. It is enough to say that the question has not been determined in this state. Defendants say that, because of that, and because of the opinion of the legal department of the city, and because it has not been prevented in other cities, they were in doubt about it. We are satisfied that petitioners have a grievance; but they are not without a remedy. The question is whether, under the circumstances shown, defendants should be removed from the offices to which they have been elected by the people for willful or habitual neglect or refusal to perform the duties of their offices.

The law in regard to removals is drastic and highly penal. It appears to us that to remove these men, under the circum-

stances, would be too harsh. Instead of teaching respect for the law and its officers and strengthening the law, the tendency would be to cause disrespect for both. Every officer ought to faithfully and honestly perform the duties of his office even without such a law; but there are some who will not do so even with it. This law is wholesome in a proper case; but we think it was not the intention of the Legislature that it should be so strictly construed against officers as plaintiff contends. The courts should be reasonable and just in construing and applying it. There are those who would remove an officer for the slightest failure of duty, whether intentional or otherwise, while others would go to the other extreme, and not remove under any circumstances. As stated, while the removal law is wholesome, there is a point beyond which it cannot go without becoming oppressive and the subject of criticism and condemnation.

These defendants say they were acting in good faith, and we believe they were. If this is so, their refusal would not be willful. To willfully refuse or willfully neglect the performance of an alleged duty, they should know what that duty is. Ordinarily, and for some purposes, they are presumed to know the law. But here was a question as to whether Sunday baseball, as such, was contrary to the statutes of the state or the ordinances of the city. Defendants are not lawyers. The question had not been settled by our court. To say the least of it, there might be an honest difference of opinion, even among lawyers, on the subject. To hold that defendants should be removed for this would be to hold that such officers must correctly interpret the laws in advance of decisions by the courts, at the peril of removal if they fail to do so.

"Willfully" has been held to mean intentionally, deliberately, with a bad or evil purpose, contrary to known duty. *Parker v. Parker,* 102 Iowa, 500, 506; *State v. Savre,* 129 Iowa, 122; *Werner v. Flies,* 91 Iowa, 146; *Felton v. United States,* 96 U. S. 699, 702 (24 L. Ed. 875); *Evans v. United States,* 153 U. S. 584, 594 (14 Sup. Ct. 934, 38 L. Ed. 830); *Potter v.*

*United States,* 155 U. S. 438, 446 (15 Sup. Ct. 144, 39 L. Ed. 214.)

Officers must act honestly and in good faith; but they must necessarily be vested with some discretion. *State v. Hospers,* 147 Iowa, 712.

Suppose a crime is committed, and an officer is informed of it. The identity of the party charged is in doubt; but it is claimed by the informant that some well-known person in the community, of good standing, is the guilty one, but the officer is not certain about it. The officer, or any one, may file information. There may be some liability for false arrest. It may be he that, under the circumstances stated, an information ought to be filed by some one. But, if the officer fails to do it because of doubtful identity, should his refusal be deemed to be willful under the facts stated, and under such a statute as ours?

Or suppose there are 1,000 alleged violations of the Sunday law in Cedar Rapids, or Des Moines, or any other city, by the sale of newspapers, milk, medicine, cigars, etc., and some one should desire to test the law, or set an example, and should request the chief of police to file 1,000 informations at one time; but the officer is of the opinion that a few prosecutions might have the desired effect. Should he be removed because of failure to prosecute all at one time?

The mayor, no doubt, could file an information, or direct it to be done. He acts in a judicial capacity in trying the case after information is filed in cities not under the commission form, and for a violation of an ordinance there is no change of venue. It might be a matter of some delicacy for him to file an information himself in a case he must try. If he takes too much interest in the matter, he might not be able to decide impartially as judge, if a doubtful legal question be involved.

3. SAME: authority to file information: removal: defenses.

That it was customary for some one else than the city officers to prosecute certain cases would not of itself be a defense. All these matters taken together are proper to be

taken into account in determining whether defendants acted in good faith or whether they acted willfully. Under the circumstances here shown we think the fact that defendants sought and relied upon the opinion of the legal department of the city is a proper circumstance to be considered. Cedar Rapids is under the commission form of government, with a legal department, and many questions may be properly submitted to it. We do not intend to hold that in all cases, under the removal law, advice of counsel would be a defense. It should not be used as a mere subterfuge, behind which a guilty officer could shield himself, and escape the consequence of his wrongdoing. Nor would the order of the superior officer of the chief of police of itself be a defense, if such order was in conflict with his duty as defined by the law.

The costs were very properly taxed against the city.

Under the entire record, we are of the opinion that the judgment of the district court was right, and it is therefore *Affirmed*.

All the Justices of the full bench concur.