STATE OF IOWA ex rel. JOHN FLETCHER, Attorney-general, Appellant, v. E. L. NAUMANN, Appellee.

No. 41230.

NOVEMBER 19, 1931.

John Fletcher, Attorney-general, and Oral S. Swift, Assistant Attorney-general, for appellant.

LaMonte Cowles and Seerley, Clark & Hale, for appellee.

DE GRAFF, J.—The instant action is predicated on Section 1091, Code, 1927. The provisions material to this action read as follows:

"Any * * * elective officer * * * may be removed from office by the district court for any of the following reasons:

"1. For willful or habitual neglect or refusal to perform the duties of his office.

"2. For willful misconduct or maladministration in office.

"3. For corruption. * * *"

Section 1093, Code, 1927, provides: "The petition for removal may be filed: 1. By the attorney-general in all cases. * * *"

The defendant, E. L. Naumann, was a duly elected and qualified member of the Board of Supervisors of Des Moines County, and was such during all times material to the acts contained in the specifications set forth in the plaintiff's petition. Before referring to the charges set forth in the ouster petition filed by the State, it may be well to define the words "willful," "willful misconduct," "maladministration in office" and "corruption," as used in Section 1091, supra, as interpreted by this court in decisions heretofore made. The pertinent question before us is whether the defendant is guilty of one or more of the specifications set forth in plaintiff's petition.

Each case of this character must depend upon the specifications alleged and the evidence offered in support thereof. As said in State ex rel. Collins v. Garretson, 207 Iowa 627, l.c. 632:

"Important in this consideration is the word 'willful' contained in the legislation. Not every mistake, inattention to duty, or failure to comply with the statute amounts to a 'willful or habitual neglect or refusal to perform the duties of his office,' or 'willful misconduct or maladministration in office,' or 'corruption.' "

State ex rel. Kirby v. Henderson, 145 Iowa 657; State ex rel. Gebrink v. Hospers, 147 Iowa 712; State ex rel. Barker v. Meek, 148 Iowa 671; State v. Roth, 162 Iowa 638; State ex rel. Cochran v. Zeigler, 199 Iowa 392.

In State ex rel. Barker v. Meek, supra, it is said:

"If it be admitted, as argued, that the primary purpose

of the statute is the protection of public interests, it may well be said that those interests are not imperiled by acts of a trifling or unimportant character occasioning no injury against which the personal responsibility and official bond of the incumbent do not afford undoubted security. Such peril arises only when his administration of the office is marked by such grave misconduct or such flagrant incompetency as demonstrates his unfitness for the position. That is the controlling idea of the statute we ourselves have decided."

In State v. Roth, supra, it is said:

" 'Willfully' has been held to mean intentionally, deliberately, with a bad or evil purpose, contrary to known duty."

In State ex rel. Cochran v. Zeigler, supra, it is said:

"The word 'willful,' as used in this connection, was held, in State v. Meek, 148 Iowa 671, to imply knowledge on the part of the officer, together with a purpose to do wrong."

It is manifest that the statute governing the removal of public officers is for the public benefit and that an officer may be ousted, under the statute, when he acts willfully and violates a statute or a duty imposed "with a bad or evil purpose, contrary to known duty."

The statute (Section 1091, Code, 1927) is based upon the principle of public policy. In State ex rel. v. Canning, 206 Iowa 1349, a member of the Board of Supervisors of Monroe County was involved in an ouster proceeding. The trial court dismissed the petition and this court sustained the judgment, except as to taxation of costs. This court in its opinion said:

"We think, however, under the entire record, that there was a failure to establish any willful corruption or maladministration of the office of a member of the board of supervisors on the part of the appellee. * * * There can be no condonement of willful misconduct or corruption in office, even though the amount involved may appear to be inconsequential and trivial. Peculation, as a badge of misconduct and corruption, is not to be measured by its extent or grossness. There must, however, be a willful intent to do wrong, or a maladministration of office, to warrant a summary removal of a public officer."

The remedy for the removal of a public officer is a very drastic one. State ex rel. Gebrink v. Hospers, 147 Iowa 712. The proceeding is penal or quasi-criminal in character and the statute must perforce be given a strict construction and "nothing can be added thereto by inference or intendment." Tennant v. Kuhlemeier, 142 Iowa 241, l.c. 244.

I. Prior to the commencement of the trial of this case the defendant-appellee filed a motion to strike Divisions I, III, VI and IX, which motion was sustained by the trial court, and to this ruling the plaintiff excepted, and alleges error. Divisions I and VI respectively contained allegations that upon the particular occasions named therein the defendant traveled from Burlington, Iowa, to distances outside the county, but intrastate, in autos at no cost to himself and that he charged mileage in the sum of 10c a mile against the county and received and cashed the warrant issued thereon. Divisions III and IX contain similar allegations that the defendant traveled to various points, both within and outside the county, in an automobile owned by Des Moines County and on gasoline furnished at the expense of the county and that the defendant filed a claim thereafter for mileage and accepted payment therefor from the county.

It is well at this point to turn to the statute governing the subject of mileage allowed to members of the Board of Supervisors. Section 5125, Code, 1927, provides for the compensation and mileage of county supervisors as follows:

"The members of the board of supervisors shall each receive five dollars per day for each day actually in session, and five dollars per day exclusive of mileage when not in session but employed on committee service, and ten cents for every mile traveled in going to and from the regular, special, and adjourned sessions thereof, and in going to and from the place of performing committee service. When the board is in continuous session, mileage for only one trip in going to and from the session shall be allowed."

It may be pointed out that the mileage statute (Section 5125) was amended subsequently to the commencement of the case at bar by Chapter 12, Acts of the 44th G. A. (Section 1225-d3, Code, 1931.) The aforesaid amended section provides:

"No public officer or employee shall be allowed either mileage or transportation expense when he is gratuitously transported by another, nor when he is transported by another public officer or employee who is entitled to mileage or transportation expense."

It is apparent that the legislative intent in enacting the foregoing amendment was to deny an officer who was gratuitously transported by another the right to collect mileage. Sufficient to state that under the prior statute, Section 5125, there is found nothing therein that prohibits or restricts the Board of Supervisors from allowing mileage for transportation gratuitously given to a member of the Board by a person, official or otherwise. The filed petition did not, in the Divisions challenged by the motion to strike, state facts which constituted grounds for removal of the defendant from office.

It may be said that the mileage statute is intended to cover both compensation and expenses. If the officer's expenses are more than his mileage, it is his misfortune. Bringolf v. Polk County, 41 Iowa 554; Harding v. Montgomery County, 55 Iowa 41.

■■■ Even though the defendant and the Board of Supervisors misconstrued the law in the allowance of the mileage in question, and although the said trips were made without actual expense to the defendant, the acts of the Board or of the defendant in the premises may not be said under the record facts to have been a willful or corrupt act or such as would constitute maladministration in office. An erroneous interpretation of any law, especially by a layman public officer, is not ground for ouster of such officer. This court in State ex rel. Barker v. Meek, 148 Iowa 671, said:

"It is not given to any man to be absolutely perfect in the discharge of all duty. There is no man in official position so letter perfect in the law that he does not at some point by act or omission or misconstruction of the law, though with perfect integrity of motive, fall short of the strict statutory measure of his official duty."

In State ex rel. v. Hoglan, et al, 60 N. E. 627 (Ohio) (quo warranto proceeding) a city official justified his action under a certain statute and the court ruled that his construction of

the statute was wrong. The Supreme Court of Ohio said (p. 628):

"Such errors frequently arise in the performance of their duties by public officers, and it has not hitherto been regarded as an evidence of such incompetency as to require that they should be removed."

In State v. Roth, 162 Iowa 638, l.c. 651, it is said:

"These defendants say they were acting in good faith, and we believe they were. If this is so, their refusal would not be willful. * * * Defendants are not lawyers. The question had not been settled by our court. To say the least of it, there might be an honest difference of opinion, even among lawyers, on the subject. To hold that defendants should be removed for this would be to hold that such officers must correctly interpret the laws in advance of decisions by the courts, at the peril of removal if they fail to do so."

The good faith of the instant defendant was not questioned. Section 5118, Code, 1927, provides that the members of the Board of Supervisors shall meet at the county seat of their respective counties on certain specified dates, and "shall hold such special meetings as are provided by law." This statute does not contemplate that committee meetings shall be held at the county seat. On the other hand, the statute in certain instances contemplates and provides that membership of the board shall act jointly with members of the Board of other counties,— for example, inter-county levee or drainage districts. Chapter 354, Code, 1927, Sections 7606 and 7610. The same is true with regard to proceedings under Chapter 354-A-1, converting intra-county districts into inter-county districts. Chapter 361, Code, 1927, authorizes intra-county districts to co-operate in constructing and operating inter-state drainage districts. Sections 7752 and 7757. The statutes to which reference has been made, fail to disclose any restriction against charging mileage for trips made on county business, even though the officer collecting the mileage did not furnish the transportation.

We conclude, therefore, that the trial court correctly ruled the defendant's motion to strike the divisions of the petition referred to in said motion.

■ II. The plaintiff-appellant assigns error in that the trial court determined that Division II of the filed petition did not constitute a ground for removal of the defendant from office. Division II alleges that the Board of Supervisors on January 22, 1921, held a meeting for the letting of supplies, materials and construction work to be furnished Des Moines County. The plaintiff alleges in said Division that the letting of bids was not completed on said date and continued over until the evening of January 23d on which date the letting of the bids was completed, and that the said defendant in said session in connivance with other members of the Board changed the minutes of said session to show said session to be a committee meeting for which the defendant would be entitled under the law to mileage; that the defendant filed claim for mileage for both January 22nd and 23d for 10c for every mile traveled in going to and from the meetings of the members of the board; and that the defendant accepted from Des Moines County the said mileage in violation of Section 5125, Code, 1927, as heretofore quoted in this opinion. The evidence of the proceedings of the Board is their official record, to wit, the minutes of said Board. The minutes were prepared by the County Auditor, but were not entered for a day or two after the meeting. When the minutes were presented to the Board they were found incorrect and were amended and corrected by striking out the figure 3 and inserting the figure 2 in the date. The record evidence shows that the Board had not adjourned for the day (Jan. 22nd) when the County Auditor voluntarily left the meeting at the stroke of five, apparently believing in the strict observance of business hours. The Auditor testified:

"My understanding is they (the Board) said they couldn't get through for that day and they would adjourn and finish up the next morning. Somebody said, 'it's about time to go home,' and that's the way they do it. If he (defendant) attended a meeting on the 22nd and on the 23d he would be entitled to per diem for both days, but only one mileage. If he attended a meeting on the 22nd and a committee meeting on the 23d, he would be entitled to mileage for both days."

The evidence shows that the Board decided to sign the contract on the 22nd, but were unable to do so because the auditor

had left for the day and taken the contract with him, and the auditor's office was locked when the decision was made. It was for this committee work on January 23d that the 40c in question was collected by the defendant. The defendant does not question that by reason of only 40c being involved his removal would not be justified, if other circumstances bearing on this matter warranted his removal. The contract in question was let within the legal meaning of that term on January 22nd. All of the Supervisors so testified and there is no contradiction. It is true that Mr. Sourwine stated that the contract was then in the Supervisors' room. This statement on his part was a *lapsus linguae,* as Mr. Sourwine's later testimony shows. The actual signing of the Simmer Oil Company contract in question was a ministerial act. The letting of the contract, which involved the meeting of the minds of the parties, occurred on January 22nd. Furthermore, there is no evidence that the defendant Naumann knew it was illegal to accept the 40c involved as mileage. As heretofore pointed out, an erroneous interpretation of the law by a public officer is insufficient to warrant his removal from office. See 15 C. J. 480, n. 64-[a], with cases cited; State v. Norris, 16 S. E. 2 (N. C.). It therefore appears that the trial court was correct in holding that nothing was shown in support of the allegations of Division II to justify the removal of the defendant from office.

III. Plaintiff assigns error in the holding of the court that Division IV of its petition was not sufficient to constitute ground for the removal from office of the defendant. This division of the petition has reference to delinquent taxes, in that, in the year 1928, the Phillips Motor Company owed delinquent taxes to Des Moines County, and that at said time the defendant instructed said delinquent tax collector not to collect penalty, as provided by law, on the delinquent tax owed by said Motor Company. Plaintiff further alleges that said act was a corrupt practice on the part of the defendant within the meaning of Section 1091, Code, 1927. The plaintiff-appellant contends that the matter of settlement of delinquent taxes is prescribed by the code and that that manner is not to provide for a settlement of the tax by a waiver of the penalty. Sections 7193-a1 to 7193-b1 of the Iowa Code (1927) contain special provisions for the compromise of delinquent taxes. The record before us does

not even indicate that the transaction in question was not one that came within the foregoing provisions. There was no showing that the property involved had not been offered for sale without a purchaser, nor is there any showing of the absence of any agreement filed with the County Treasurer and the County Auditor. This court will not presume that any act of the Board of Supervisors' was illegal or willfully done. The evidence must be clear and convincing and must show that there was a willful violation of law by the officer involved. The burden was on the plaintiff at all times and it must be borne in mind that an ouster proceeding is drastic in character and penal in nature. There is no evidence which shows that the defendant knew that the act was illegal. In brief, there was a complete lack of evidence in this regard to warrant the removal of Naumann as Supervisor under plaintiff's specification No. IV. Naumann testified, no one contradicting, that the waiver of penalty was in the nature of a compromise. There is no showing that such compromise was not entirely right and proper in the exercise of good business sense by the members of the Board of Supervisors. In conclusion, there was no showing that Naumann acted willfully or that he did anything that would make it necessary, as said in State ex rel. Barker v. Meek, supra, to " 'rid the community of a corrupt, incapable, and unworthy officer.' " The trial court was not in error in holding for the defendant as to this ground for removal.

IV. The plaintiff next complains of the action of the trial court in not finding that the allegation contained in Division V was a sufficient ground for the removal of the defendant from office. It is alleged in said division of plaintiff's petition that one F. W. Buser was the duly elected, qualified and acting Treasurer of Des Moines County and that he had in his possession evidences of the delinquent taxes which were unpaid and that the defendant and other Supervisors of the County on or about May 5, 1920, requested the said Treasurer not to collect the delinquent taxes and that the said Treasurer, acting upon said instruction and request, did not collect said taxes and that the Board of Supervisors and defendant requested said Treasurer not to list for taxation certain undeclared property not previously listed that should have been listed in the office of said Treasurer and made a part of the tax lists of said office.

Des Moines County prior to the time in question had em-

ployed tax ferrets, but the H. W. Baker Company so employed had been discharged at the time in controversy. The County Treasurer (Buser) testified that the real estate subject to delinquency had never been assessed or spread upon the tax books of the County Treasurer; that the statements received by him from the tax ferrets were simply estimates made as to what might possibly be due from the parties delinquent; that there were no levies made for any amount for these taxes. There appears, therefore, no authority for calling these statements taxes at all. They were not verified and the Treasurer did not know whether the amounts were correct or not. The matters involved were in dispute, and the statements received by the Treasurer simply indicated what the tax ferrets claimed to have been property omitted from taxation. Neither the defendant Naumann nor any other member of the Board ever interfered with the County Treasurer, nor did any of them at any time request the Treasurer to hold up the statements as to anybody in particular, nor was any request made that no attempt should be made to collect taxes. It appears that the defendant Naumann was the executor of his mother's estate, and was the residuary legatee named in her will. This particular matter of the delinquency of the executor was called to his attention by the State Board of Assessment and Review, and the defendant within a short time paid the taxes, and it may be said in passing that he is the only person of the entire delinquent list to whom letters were addressed who paid any taxes on omitted property. He was not required to make such payment, but the fact that he did is quite cogent proof that he was not trying to use any influence on the County Treasurer to avoid payment of taxes. Clearly, the evidence fails to show that the defendant did anything illegal, knowing it to be such. When the tax ferrets were discharged, defendant handed these preliminary statements to the Treasurer, who asked him what to do with them, and Naumann said: "Lay them aside for the time being." There is no showing of any lack of good faith on the part of either the County Treasurer or the defendant Naumann. There was no connivance, collusion, or duress between the Treasurer and Naumann in this matter. The only showing made by the plaintiff under this specification of his petition is that the Treasurer did not choose to follow the suggestions made by the tax ferrets.

We conclude, therefore, that the trial court was right in dismissing the plaintiff's petition on this count.

█ V. It is the contention of the plaintiff that the court erred in not sustaining the plaintiff's allegations, as a cause for removal of the defendant, which are contained in Division VIII of plaintiff's petition. This division alleges that during the years 1929-30-31 the Board of Supervisors, of which the defendant was then a member, allowed many unliquidated claims presented for allowance to the said Board, which claims were unverified.

Section 5124, Code, 1927, provides *inter alia* that "all unliquidated claims * * * shall be duly verified by the affidavit of the claimant." The evidence discloses that some 500 claims were introduced in evidence, all of which were allowed by Des Moines County. It may be noted in this connection that unliquidated claims are the only claims that are required by statute to be verified. What is the legal test in determining whether or not a claim is a liquidated claim? In Links v. Mariowe, 84 Atl. 1056 (N. J.), the test described by the court in determining whether a claim is or is not liquidated is as follows:

"Will an action of *indebitatus assumpsit* lie thereon? If so, it is liquidated within the legal meaning of the word 'set-off.'"

█ The word "liquidated" means that the amount due has been ascertained and agreed upon by the parties or fixed by the operation of law. Redmond & Co. v. A. & B. Air Line Ry., 58 S. E. 874 (Ga.). See, also, White v. Curtis, 98 N. Y. S. 319, quoting from Nassoiy v. Tomlinson, 42 N. E. 715 (N. Y.); Wise v. Ferguson, 138 S. W. 816 (Tex.); Scarritt Estate Co. v. Schmelzer & Sons Arms Co., 86 S. W. 489, l. c. 491 (Mo.); C. M. & St. P. Railroad Co. v. Clark, 178 U. S. 353, 44 L. Ed. 1099, l. c. 1108.

This court has held that irregularities in claims and in the manner of their allowance do not *per se* constitute evidence of fraud in the absence of other suspicious circumstances. Monona County v. Gray, 200 Iowa 1133, l. c. 1146. It is held in State v. Kennedy, 108 Pac. 837 (Kan.), that actual departure by the Board from the statute relating to the allowance of claims against the county occurring through mere inadvertence without wrong-

ful intent and under circumstances exposing the county to no imposition or injury do not constitute corruption within the meaning of the removal statute. In Corker v. Pence, 85 Pac. 388 (Idaho), it is held that failure to itemize claims or attach vouchers required by statute is not a cause for removal under the "refusal or negligence" section of the removal statute.

Section 4653, Code, 1927, in substance provides that claims for labor or other expenses in connection with road or bridge construction need not be verified if the County Engineer certifies to their correctness. In Getchell & Martin Lbr. Co. v. Peterson & Sampson, 124 Iowa 599, it is held that the initials "O.K." constitute a brief but expressive certificate that the claim on which they are endorsed is correct. Sections 5329 and 5330, Code, 1927, provide that claims for poor relief need not be verified, if certified by the officers in charge of the poor. Section 5321 provides that overseers of the poor appointed by the county have all the powers of township trustees with respect to poor relief.

It is only claims which are unliquidated that must be verified and the only requirement in the statute is that such verification is a condition precedent to an action brought against the county. Section 5124, Code, 1927. The Board of Supervisors may by resolution authorize the auditor to pay claims upon presentation where they constitute fixed charges, such as freight, express, postage, water, light, and telephone service, and for all county pay rolls. Section 5144, Code, 1927.

Relative to the multitudinous claims, some 500 in number, which were offered in evidence under Division VIII of plaintiff's petition the trial court in his opinion stated as follows:

"In not a single instance in this huge list of exhibits was it shown or attempted to be shown that any claim was ever allowed and ordered paid by the Board of Supervisors of this County that was not justly due and owing to the claimant. There has not been a single dime of graft alleged or proved in connection with any of them."

100 claims were certified by the County Engineer; 96 claims were certified by two supervisors of the poor in Des Moines County; 66 claims were certified by the Steward of the County Home; and 16 were certified by the County Physician.

20 claims were certified by the public nurse; 75 claims were certified by the overseer of the poor; 20 of the claims were certified by the County Auditor, which were for supplies purchased by him under the authority of the Board; 16 claims were certified by the janitor of the courthouse, who had obtained permission from the Board to make small purchases of supplies for use in his work about the courthouse; 15 claims were certified by the sheriff, 11 by the County Treasurer, and several by the county superintendent of schools, and four were certified by the township trustees.

It is sufficient to say without a detailed analysis of these claims that a great majority showed on their face that there was no occasion under the law to have same verified. Time and space do not require a more detailed analysis. The burden was upon the state to establish that the claims relied on were not liquidated claims as herein defined.

We deem it unnecessary to give space in this opinion to other specifications or divisions set forth in plaintiff's petition and relied upon as grounds for the removal of the instant defendant. Sufficient to state that none of the charges against this defendant are shown to be willful, corrupt, or such as to constitute maladministration in office.

While we do not find sufficient evidence in this record to justify the court in entering an order peremptorily removing the appellee from office for willful misconduct, corruption, or maladministration, we are impressed with the fact that some of the transactions in which the appellee was involved came very close to what may be termed "the danger line."

It should not be forgotten that "a public office is a public trust," and all public officers should so conduct their official duties as to be like Caesar's wife, "above suspicion" of irregularities in the administration of their offices, even though such irregularities may not, under the law, constitute such willful misconduct, corruption, or maladministration as to merit removal from office.

The judgment entered by the trial court is therefore affirmed.

FAVILLE, C. J., STEVENS, ALBERT, and WAGNER, JJ., concur.